## STATE HIGHWAY COMMISSION v VANDERKLOOT

### Opinion of the Court

1. Administrative Law—Constitutional Law—Discretion—Legislative Delegation.

> The constitutional prohibition against a Legislature delegating its lawmaking powers does not prevent it from conferring a power of discretion in the administration of a law; conferring such a power of discretion is not unconstitutional where the exercise of the discretion is controlled and guided by adequate standards in the statute authorizing it.

2. Eminent Domain—Necessity.

> The right to eminent domain is founded on the law of necessity, but the taking need not be an absolute necessity; it is sufficient that it is reasonably necessary for public convenience or advantage.

3. Eminent Domain—Necessity—Determination.

> The constitutional provision for public taking of private property, which does not have any statement regarding the manner in which the necessity of taking is to be determined, gives to the Legislature the power to determine necessity or to delegate the determining power (Const 1963, art 10, § 2).

4. Eminent Domain—Necessity—Determination—Delegation—Standards.

> The statute granting to the State Highway Commission the discretionary power to invoke the right of eminent domain to acquire property for highway purposes and providing to the owner of the property taken the right to challenge the necessity of the taking on the grounds of fraud or abuse of discretion

References for Points in Headnotes

[1] 16 Am Jur 2d, Constitutional Law § 240 *et.seq.*

[2, 3] 26 Am Jur 2d, Eminent Domain § 111 *et seq.*

[4–6, 8, 9] 26 Am Jur 2d, Eminent Domain § 113 *et seq.*

[7] 1 Am Jur 2d, Administrative Law § 117 *et seq.*

Validity of statute or ordinance vesting discretion in public officials without prescribing a rule of action, 92 ALR 400.

was intended by the Legislature to compel the commission to determine the necessity of the taking on the basis of all applicable factors and thus does not constitute an unconstitutional delegation of Legislative power (MCLA 213.361 *et seq.).*

5. EMINENT DOMAIN—NECESSITY—DELEGATION—CONSTITUTIONAL LAW.

The possibility that the State Highway Commission might abuse its discretionary power to take property by eminent domain does not make unconstitutional the legislative delegation of that power because there is a presumption against this occurrence, sufficient standards for its exercise are provided and judicial review of its exercise is available to aggrieved parties (MCLA 213.361 *et seq.).*

6. EMINENT DOMAIN—PROTECTION OF NATURAL RESOURCES—HIGH-WAYS—CONSTITUTIONAL LAW.

The statute granting to the State Highway Commission discretion to invoke the right of eminent domain to acquire property for highway purposes is not unconstitutional because it fails to provide for the protection of the state's natural resources as required by the 1963 constitution, since the constitutional natural resources protection provision does not require the Legislature to deal with environmental problems in every eminent domain statute (Const 1963, art 4, § 52).

DISSENT BY TARGONSKI, J.

7. ADMINISTRATIVE LAW—DELEGATION—DUE PROCESS.

*A delegation of power to an administrative body which does not contain definite standards only meets due process requirements if procedures established for the exercise of the power furnish adequate safeguards to those who are affected by the administrative action.*

8. EMINENT DOMAIN—HIGHWAYS—NECESSITY—DETERMINATION—STAT-UTORY DELEGATION—STATE HIGHWAY COMMISSION.

*The statute granting to the State Highway Commission discretion to determine the necessity of invoking the right of eminent domain to acquire property for highway purposes provides neither a definite standard nor adequate safeguards to protect the individual property owner from arbitrary action by the commission because the property owner must carry the burden of proving that the commission abused its discretion in finding that it was necessary to acquire the property when there is no evidence as to the yardstick employed by the commission in reaching its conclusion (MCLA 213.361 et seq.).*

9. Eminent Domain—Highways—Statement of Necessity—Evidence—Burden of Proof.

> The statute requiring that a property owner prove that the State Highway Commission has abused its discretion in determining the necessity of taking the owner's property by eminent domain for highway purposes places an unfair and unjust burden upon the owner who must attack the commission's statement of necessity when he has not been notified of what specific need there is for the taking of his property; the burden of proof should be upon the commission which is in a better position to prove the asserted necessity (MCLA 213.361 et seq.).

Appeal from Oakland, William John Beer, J. Submitted Division 2 May 10, 1972, at Lansing. (Docket No. 12394.) Decided September 27, 1972. Leave to appeal granted, 389 Mich 752.

Complaint by the State Highway Commission against Robert C. Vanderkloot and Clara A. Vanderkloot to condemn property for highway purposes. Accelerated judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso, Stanley D. Steinborn,* and *Robert L. Krause.* Assistants Attorney General, for plaintiff.

*Vanderkloot, Young & Reid,* for defendants.

*Amicus Curiae: Travis, Warren, Nayer & Burgoyne* (by *John M. Roche).*

Before: J. H. Gillis, P. J., and T. M. Burns and Targonski,* JJ.

J. H. Gillis, P. J. Plaintiff, Michigan State High-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

way Commission, acting pursuant to the statutory authority granted it in 1966 PA 295 as amended (MCLA 213.361 *et seq.;* MSA 8.261[1] *et seq.),* deemed it necessary for the use and benefit of the public to widen and improve a segment of Highway US-24, a free access highway running in and through the Township of Bloomfield, Oakland County, Michigan. In order to accomplish this public improvement, plaintiff found it necessary to take the title in fee simple to certain real estate along said route, including a portion of the property belonging to defendants herein.

Acting in accordance with §§ 6 and 7 of Act 295, plaintiff commenced condemnation proceedings on May 12, 1971 in the circuit court for the County of Oakland by filing a petition and demand for jury trial, a notice of taking and statement of estimated compensation, a declaration of taking, a statement of necessity,[1] and an order for hearing on petition. On May 25, 1971, defendants filed a motion for a review of the determination of necessity, pursuant to § 8, Act 295 (MCLA 213.368; MSA 8.261[8]), asserting in said motion that plaintiff had been guilty of abuse of discretion in determining the necessity of the taking of their property. The claim was based on the following allegations:

(1) " * * * Telegraph Road (Highway US-24) abutting the subject property adequately serves the necessity and interest of the traveling public * * * ."

(2) " * * * The property petitioner seeks to take * * * is a swamp area having increasingly rare or even unique ecological characteristics * * * ."

(3) " * * * The property petitioner seeks to take * * * [presents] * * * construction problems unnecessarily and unreasonably increasing the cost of the proposed improvement to the public."

---

[1] See appendix for "Statement of Necessity".

Defendants also filed a motion for accelerated judgment asking dismissal of the plaintiff's petition upon various grounds, the pertinent one to this appeal being as follows:

"said commission lacks the legal capacity to sue for the reason that Act 295, Public Acts of 1966 [MCLA 213.361 *et seq.;* MSA 8.261(1)] is unconstitutional for the reasons that (a) said statute prescribes no reasonably defined standards for the exercise of the discretion required of the commission under said act and (b) the duties of the commission are in conflict with the provision of Article IV, Section 52, of the Michigan Constitution of 1963."

On the 15th, 18th and 21st days of June, 1971, a hearing was held before the Oakland County Circuit Court at which was considered defendants' motion for accelerated judgment. The court gave its opinion from the bench agreeing with defendants' contention that the property for public highway purposes act (MCLA 213.361 *et seq.;* MSA 8.261[1] *et seq.)* was unconstitutional. The court by way of explanation stated:

"The law and the statutes which have been invoked over the lands here in question are challenged as being unconstitutional because there are no standards for any land owner to have reliance upon. Now, it seems to this judge there is a fatal unconstitutional error when you say that a citizen has the right within ten days to challenge the determination made against his property on necessity upon the ground of abuse of discretion. It is difficult for this judge to follow how you can challenge abuse of discretion if you have never had an opportunity to be heard or you know nothing about what standards were employed. And that is why I feel that these laws here discussed are unconstitutional as to depriving the citizen here involved with due process of law. Certainly nothing is served by saying that a citizen who is a private property owner can challenge

on the ground of abuse of discretion under these kinds of circumstances."

On July 14, 1971, the Oakland County Circuit Court entered an order granting respondents' motion for accelerated judgment. This order stated in pertinent part:

"1. * * * The court finds that Act 295, PA of 1966 is unconstitutional for the reason that said act denies due process to respondents in that there are no standards stated within the act, either specifically or by reference, to define the authority of the petitioner to determine the necessity of taking private property for highway purposes pursuant to said act, so that respondents may exercise the right of review for abuse of discretion granted under section 8 of said act * * * .

"2. * * * The court further finds that Act 295 of PA of 1966 is unconstitutional for the reason that the act fails to provide for the protection of the natural resources of the state from pollution, impairment and destruction as required under Article IV, Section 52 of the Michigan Constitution of 1963 * * * ."

This appeal, instituted by the Michigan State Highway Commission, followed.

Addressing ourselves first to the due process[2] challenge of unconstitutionality regarding 1966 PA 295 as amended (MCLA 213.361 *et seq.;* MSA 8.261[1] *et seq.),* the basic issue that presents itself is: What does the due process guaranty require when there occurs a granting of administrative discretion regarding the invoking of the power of eminent domain? It has become impossible for the Legislature to deal directly with the host of details involved in the varied and complex situations on which it legislates, and, consequently, it has increasingly found it necessary to leave them to the

_____

[2] "No person shall be * * * deprived of * * * property, without due process of law." Const 1963, art 1, § 17.

reasonable discretion of administrative officers. It is important to understand that the prohibition against the legislature's delegation of its lawmaking powers does not mean that it cannot confer a power of discretion in the administration of the law itself. 1 Am Jur 2d, Administrative Law, § 107, p 906. *Osius v St Clair Shores,* 344 Mich 693, 698 (1956). It is said that the bestowing of such discretion does not become an unconstitutional delegation of a legislative function where its exercise is controlled and guided by adequate standards in the statute authorizing it. 1 Am Jur 2d, Administrative Law, § 107, pp 906–907. On the other hand, a statute which in effect reposes an absolute, unregulated, and undefined discretion in an administrative agency subjects men's rights to be determined not by the law itself but instead by the let or leave of administrative officers, thus passing beyond the legitimate bounds of delegation of legislative power.

It is fundamental to an understanding of this case to recognize that the right of eminent domain is founded on the law of necessity. 26 Am Jur 2d, Eminent Domain, § 2, p 639. If the object can be effected practically as well in some manner other than by appropriating private property, then a taking cannot occur under the guise of eminent domain. The taking, however, need not be an absolute necessity; it is sufficient that it is reasonably necessary for public convenience or advantage. 39 CJS, Highways, §§ 26, 99, pp 946, 1035. Each of the two most recent Michigan Constitutions preceding the present constitution contained eminent domain provisions which required that the necessity for taking private property for the use or benefit of the public be ascertained either by a jury of 12 freeholders or by a commission of not less than 3 commissioners appointed by a court of

record. (Const 1908, art 13, § 2; Const 1850, art 18, § 2.) However, there is no statement in the 1963 Constitution regarding the manner in which necessity is to be determined. *Chamberlin v Detroit Edison Co,* 14 Mich App 565 (1968). It simply provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Const 1963, art 10, § 2.

It is well-settled to the point of being conceded by defendants that such a provision places the determination of necessity in the Legislature, which issue it may determine itself or delegate the power to do so. *Hendershott v Rogers,* 237 Mich 338, 341–342 (1927); 39 CJS, Highways, § 27, p 946; 26 Am Jur 2d, Eminent Domain, §§ 111, 112, pp 767–769; *Bragg v Weaver,* 251 US 57, 58; 40 S Ct 62, 63; 64 L Ed 135, 137 (1919). In the instant case, the Michigan Legislature has adopted a statute (1966 PA 295, as amended [MCLA 213.361 *et seq.;* MSA 8.261(1) *et seq.])* granting to the State Highway Commission the discretionary power of invoking the right of eminent domain to acquire certain property for highway purposes. The act, however, provides a means by which an aggrieved property owner can challenge the commission's determination of necessity:

"Within 10 days after the notice required by section 6 has been given, *a person claiming* fraud or *abuse of discretion,* or both, *in the necessity of the taking of all or any part of the property for the purposes stated in the petition,* and having a justiciable interest in the property involved, may file a motion in the same court and cause, *asking that such necessity be reviewed.* He

shall give at least 10 days' notice of the hearing to all parties interested in the same parcel. Such hearing shall be held within 20 days of the filing of the motion. *At the hearing the court shall determine whether or not there has been* either fraud or *abuse of discretion in regard to such necessity.* Appeal from the findings of the court may be taken as in other civil cases." 1966 PA 295, § 8; MCLA 213.368; MSA 8.261(8). (Emphasis supplied.)

It is defendants' contention that Act 295 allows the highway commission to determine necessity without providing adequate standards to guide the exercise of that discretionary determination, and, hence, is unconstitutional. It is argued that a property owner cannot demonstrate abuse of discretion or the courts pass on such abuse when the considerations upon which the State Highway Commission is to base its finding are left undefined.

After extensive research, it appears doubtful that any court of record has been confronted before with this particular issue. Nor can we in good conscience simply "hang our hat" on the argument proffered by the writer of the amicus curiae brief that §§ 1 and 5 (MCLA 213.361; MSA 8.261[1], MCLA 213.365; MSA 8.261[5]) set forth sufficient standards to meet the constitutional test. We view such sections as containing, in fact, no standards at all, but merely statements of the kinds of property or interests in property which may be acquired under the act. The *necessity* of the taking encompasses a completely different consideration.

Research has, however, disclosed various principles which tend to support in varying degrees a conclusion of constitutionality of 1966 PA 295. The exigencies of modern government have led to judicial approval of the use of broad standards and liberal grants of discretion to administrative agen-

cies. Courts have recognized the fact that in particular situations detailed standards in precise and unvarying form could prove wholly unrealistic, and more arbitrary than a general indefinite one. 1 Am Jur 2d, Administrative Law, § 118, p 925. *Ward v Scott,* 11 NJ 117, 123–124; 93 A2d 385, 388 (1952); *Swisher v Brown,* 157 Colo 378, 389; 402 P2d 621, 627 (1965).

"In many cases the courts have held that the rule requiring that a standard or rule of action be prescribed in a statute or ordinance conferring discretionary authority upon an administrative agency was sufficiently complied with, and the following legislative specifications are among those which have been held to state a sufficiently definite standard for administrative action in specific fields: *'necessity,' 'need,' 'necessary or expedient,'* 'appropriate,' 'reasonable,' 'just and reasonable,' 'fair and equitable,' 'sufficient,' 'excessive profits,' 'unduly complicated corporate structures and inequitable distributions of voting power,' 'fit' or 'unfit,' 'suitable,' 'unsuitable,' 'competency, ability and integrity,' illuminating oil which is 'safe, pure, and affords a satisfactory light,' 'worthy cause,' 'decency and good order,' 'substantial,' 'undesirable residents,' 'undesirable business practices,' 'unprofessional conduct,' 'false, fraudulent, or misleading advertising,' 'improper conduct,' 'misconduct,' 'offensive because of injurious and obnoxious noise, vibrations, smoke, gas,' and other factors, 'injurious substances,' and 'danger to peace or safety.'" 1 Am Jur 2d, Administrative Law, § 119, pp 927–928.

"A requirement that an act shall be 'in the public interest' is a sufficient criterion and standard where the subject matter of the statute renders this an intelligible and not a limitless criterion. Similarly, *'public interest, convenience, or necessity'* and 'public convenience and advantage' have been held sufficient standards." 1 Am Jur 2d, Administrative Law, § 120, p 929.

The relaxation of the general rule of specific guidelines has been most apparent in those situa-

tions where it is difficult or impracticable to lay
down a definite comprehensive rule without de-
stroying the flexibility necessary to enable admin-
istrative officials to carry out the legislative will,
*i.e.,* where the discretion turns upon the question
of personal fitness or relates to the administration
of a police regulation, and is necessary to protect
the public health, safety, morals, and general wel-
fare. 1 Am Jur 2d, Administrative Law, § 116, p
922.

There appears to be no fixed or inflexible rule of
law by which the issue of necessity of the taking
may be measured. *State Department of Transpor-
tation v Myers,* 237 So 2d 257, 262 (Fla, 1970). The
determination must depend upon and vary with
the facts in each particular case. A factor of ex-
treme importance in one case may not even be a
consideration in another situation. Some of the
factors which have been found to bear upon the
issue of necessity of highway improvement are set
forth in 40 CJS, Highways, § 179, pp 44–45:

> "In locating state highways, or highways on which
> state funds are used or which are treated as part of a
> state-wide system, the primary interest to be considered
> is that of the state at large, and the general public
> good, and not the interest of any particular locality or
> any private interest. As between two possible routes,
> comparative costs of construction are to be considered,
> but are not of themselves, a determining factor. Direct-
> ness is also to be considered, but is not necessarily
> conclusive. Other factors which, in the application of
> governing statutes, have been held properly considered
> in locating highway improvements are comparative cost
> of maintenance, safety, relation of the particular road
> whose construction is under consideration to the other
> roads of the state-wide system, adaptability to the per-
> sons using the route, probable amount of travel, volume
> of traffic accommodated, accommodation of future, as
> well as present traffic, convenience in the operation of

traffic, the service of as large a territory as possible, the securing of main trunk line routes through the state, comparative topographic and construction difficulties, center of population of communities served, and customary line of travel."[3]

Nor can we conceive that the above is by any means an exhaustive list of factors that may properly be considered in determining the necessity of an improvement. Condemnation statutes must be construed in such manner as to effectuate their purpose, not defeat legislative intent, and not lead to absurd results. *Indiana & Michigan Electric Co v Miller,* 19 Mich App 16 (1969); *Michigan Consolidated Gas Co v Muzeck,* 4 Mich App 502 (1966). It would appear that the intent of the Legislature, by placing the standard of necessity in Act 295, was to compel the highway commission to ascertain the existence or nonexistence of all factors bearing thereon. *Florka v Detroit,* 369 Mich 568, 581 (1963).

"There is no unconstitutional delegation of power where the legislature acts upon a subject as far as is reasonably practicable but, from the necessities of the case, leaves to executive officials the duty of bringing about the result pointed out by the statute, where a policy is laid down and a sufficient standard is established by statute, or where a statute sufficiently indicates the legislative purpose and merely leaves the administrative details to some agency." 1 Am Jur 2d, Administrative Law, § 111, pp 911–912.

"The purpose of the statute, the requirements it imposes, and the context of a particular provision may show that the broad standard it establishes does not require a construction as comprehensive as the words alone permit and is not so vague and indefinite as to

---

[3] For factors to be considered in determining the necessity of the establishment (as opposed to the improvement) of highways, see 39 CJS, Highways, § 27, pp 947–949.

amount to a complete absence of a standard." 1 Am Jur 2d, Administrative Law, § 118, p 926.

After careful consideration we have come to view the situation before us as an appropriate instance for the foregoing principles to apply. Consequently, we conclude that the standard of necessity as set forth in Act 295, § 8 (MCLA 213.368; MSA 8.261[8]) is an adequate one in its particular context,[4] and, therefore, is not violative of due process of law. The possibility that the highway commission might exercise its power of discretion in an arbitrary and discriminatory manner in defiance of the standard of necessity is not grounds for objection to the delegation. 1 Am Jur 2d, Administrative Law, § 112, p 913. The presumption is against such action, and, if it actually occurs, a remedy is expressly provided under § 8, namely, court relief for abuse of discretion.[5]

We now focus our consideration on the second ground upon which the trial court found Act 295 unconstitutional:

" * * * the Act fails to provide for the protection of the natural resources of the State * * * as required under Article IV, Section 52 of the Michigan Constitution of 1963 * * * ."

Article 4, § 52 of the 1963 Michigan Constitution provides as follows:

"The conservation and development of the natural

---

[4] The conclusion reached is that in this case adequate standards were fixed. Hence, decisions cited by defendants based on the failure to prescribe any standards whatever in the granting of legislative authority are not in point. Such was the situation in *Osius v St Clair Shores,* 344 Mich 693 (1956).

[5] "[T]he fact that a statute reposing powers in an administrative officer provides for judicial review of the exercise of such powers has weight in determining that the powers bestowed are not arbitrary." 1 Am Jur 2d, Administrative Law, § 108, p 907.

resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction."

Although the above section affirmatively requires the Legislature to provide for the protection of the natural resources of this state, we would be hard pressed to interpret such language as requiring the Legislature to deal with environmental problems in every eminent domain statute. We find no support in the debates of the delegates or in the address to the people to suggest such a construction. Nor will we imply such an intent on the part of the Legislature.

Reversed and remanded. No costs, a public question being involved.

T. M. BURNS, J., concurred.

## APPENDIX

"Whereas, present conditions in Oakland County, the Township of Bloomfield in the State of Michigan, necessitate the improvement of Highway US-24 through the Township of Bloomfield and

"Whereas, detailed plans showing such improvement have been prepared and are now on file in the Office of the Michigan State Highway Commission,

"Now, therefore, by virtue of the authority vested in the Michigan State Highway Commission by law, it is hereby declared and determined that it is necessary to improve Highway US-24 in and through the Township of Bloomfield, Oakland County, Michigan, extending from the intersection

of Highway US-24 and Lone Pine Road, northerly along Highway US-24, to a point of ending approximately 250 feet north of Shallow Brook Drive, and said improvement is necessary for the use and benefit of the public; and

"It is further declared and determined that it is necessary to acquire and take the fee simple or lesser estate in real property, any other property, and certain access rights to certain parcels of land located in Oakland County, Michigan, and more fully described in the Declaration of Taking attached hereto, without the consent of the owners thereof, for the purpose of improving said Highway US-24 as above described, that said parcels are necessary for the use and benefit of the public, and that a good faith written offer to purchase said parcels of land has been made, all in accordance with the requirements of Act 295, Public Acts of 1966, of the State of Michigan, as amended, and Act 286, Public Acts of 1964.

"Wherefore, the Attorney General in and for the State of Michigan is hereby directed to institute condemnation proceedings against the owners and other parties in interest in said private property necessary for the improving of Highway US-24 as hereinbefore described.

"In witness of the foregoing, I have hereunto set my hand on April 21, 1971, at Lansing, Michigan.

"Michigan State Highway Commission
"By /s/ Henrik E. Stafseth
"State Highway Director"

TARGONSKI, J. *(dissenting)*. There is agreement with the majority that the modern trend allows rather general standards when there is a delegation of authority to an administrative body. However, I feel that when definite standards are not

spelled out, adequate safeguards must be present in order to fulfill the requirements of due process. This rule has been stated in Davis, Administrative Law Treatise, § 2.00, 1970 Supp, pp 40–41 as follows:

"The focus should no longer be exclusively on standards; it should be on the totality of protections against arbitrariness, including both safeguards and standards. The key should no longer be statutory words; it should be the protections the administrators in fact provide, irrespective of what the statutes say or fail to say. The focus of judicial inquiries thus should shift from statutory standards to administrative safeguards and administrative standards."

This theory achieved the force of law in *Warren v Marion County,* 222 Or 307, 314; 353 P2d 257, 261 (1960), when that Court accepted it in the following manner:

"The important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action." (Emphasis in original.)

Although a general standard may be found in this delegation, I feel that there are no adequate safeguards to protect the individual from arbitrary action. It must be remembered that a person's right to the peaceful enjoyment of his property is one of the fundamental rights in this country and cannot be taken away by the unfettered discretion of the Legislature.

In the instant case, however, the individuals are not only subject to this legislative discretion, they also must carry the burden in proving that the petitioner abused its discretion in finding that it is

necessary to acquire an individual's property when there is no evidence as to the yardstick employed in reaching the agency's conclusion.

The statute in question, MCLA 213.366; MSA 8.261(6)(d) provides in part that the petition for acquisition of property shall contain:

* * *

"(b) A statement of purpose for which the property is being acquired, and any other pertinent matter of things, and may pray for any other or further relief to which the petitioner is entitled by law."

The obvious purpose of this provision is to state why the property must be taken. The general rule appears to be that:

"Where the statute, in prescribing the essentials of the report, does not expressly require a statement of the necessity or utility of the road, such a statement is unnecessary." 39 CJS, Highways, § 62, p 985.

In the instant case, the statute does require a statement of necessity and this must be complied with. However, a reading of the statement of purpose in the instant case, reveals that it merely states the reasons for acquisition in conclusionary terms. In order to give proper notice to the property owner, I feel it must state the underlying facts and specific reasons why a particular piece of property must be acquired for the public good.

The injustice of this procedure is compounded by the fact that the burden of proving an abuse of discretion is placed upon the individual property owner. In *Kalamazoo Road Commissioners v Dosca,* 21 Mich App 546, 548 (1970), this Court stated the prevailing rule to be:

"A declaration of necessity by the condemning au-

thority serves as *prima facie* evidence of the necessity and consequently makes it incumbent upon the property owner to show the contrary."

This procedure puts an unfair and unjust burden upon the property owner. The individual is put to a considerable expenditure of time and money to prevent the taking of his property.

Furthermore, he must attack the statement of necessity when he has not been notified of what specific need there is for his property. This burden should be placed on the petitioner, who has stated that there is a necessity and who is in the better position to carry the burden.

Therefore, I feel that the opinion of the lower court should be affirmed but on the grounds stated in this dissent.